UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAWNTAY RICARDO ALLEN,<br>Petitioner,<br>-v.-<br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br>Respondent. | 26 Civ. 4142 (JHR)<br><br>OPINION & ORDER |

JENNIFER H. REARDEN, District Judge:

Before the Court is Petitioner Dawntay Ricardo Allen's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1 (Pet.). Petitioner seeks immediate release from custody. *Id.* at 7; *see* ECF No. 14 (Reply). For the following reasons, the Petition is granted in part. Respondent is ORDERED to cause a burden-shifted bond hearing for Petitioner to be conducted before an immigration judge pursuant to 8 U.S.C. § 1226(a) by **September 22, 2026**.

## I. BACKGROUND

### A. Factual Background

The facts that are essential to the Court's holding are undisputed. On February 14, 2024, Petitioner unlawfully entered the United States without inspection near Otay Mesa, California. ECF No. 8 (Opp.) at 1. The next day, U.S. Customs and Border Protection encountered Petitioner and "determined that Petitioner [had] illegally entered the United States, served him with a Notice to Appear . . . , and released him from custody on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226(a)." *Id.*; ECF No. 8-1 (Form I-213 dated September

26, 2025); ECF No. 8-2 (Notice to Appear).[1] Petitioner states that "[t]he immigration court issued [him] a work permit and a social security card," that he "never missed one of [his] asylum hearing[s]," and that he "[has] a stable address" and "spend[s] most of [his] time with [his] family or at work." Reply. Petitioner has no criminal history in the United States. *See* Form I-213 at 2; Reply.

Between June 18, 2025 and September 26, 2025, Respondent "[came] to learn that [P]etitioner is a foreign fugitive wanted for murder in Jamaica . . . through [an] Interpol [Red] Notice." ECF No. 18 (Hr'g Tr.) at 12:18-13:4; Opp. at 1 ("ICE arrested Petitioner upon learning that he is a foreign fugitive who is wanted for murder in Jamaica."); ECF No. 17-1 (Interpol Red Notice); ECF No. 17-2 (Jamaican Arrest Warrant). Respondent asserts that, on September 26, 2025, "[a]fter receiving a referral from the Mount Vernon Police Department, . . . ICE and ATF officers went to Mount Vernon to target Petitioner for apprehension" based on these changed circumstances and were able to "positively identif[y] him through pedigree questions, physical description, and identification." Opp. at 2; Form I-213 at 2-3.[2] Petitioner was detained

[1] Petitioner has been subject to removal proceedings since he was encountered in 2024. In May 2025, an immigration judge denied Petitioner's asylum application and ordered Petitioner removed. *See* Opp. at 1; ECF No. 18 (Hr'g Tr.) at 5:18-25. Petitioner appealed that decision to the Board of Immigration Appeals (the "BIA"), which remanded the case to the immigration judge. *See* Opp. at 1; Hr'g Tr. at 5:1-6. The immigration judge again denied Petitioner's asylum application on March 30, 2026. *See* Opp. at 1; Hr'g Tr. at 5:24-25. Petitioner has appealed that decision to the BIA. Opp. at 1; Hr'g Tr. at 5:25-6:8. Petitioner's appeal is still pending. *See* ECF No. 17 (Post-hearing Letter).

[2] The parties dispute the number of arresting agents at Petitioner's September 25, 2026 arrest. Petitioner's Form I-213 lists three arresting agents: "Emmanuel Alonzo," "D. 10722 Fulmore," and "M. 10723 Gordon." Form I-213 at 2. Respondent's Post-hearing Letter lists five ICE agents and one ATF agent: "DO Emmanuel Alonzo, DO Marlon Gordon, DO Darren Fulmore, DO Raina Ashok, and DO Geraldine Manuel, and ATF Agent Eric Thornbush." Post-hearing Letter. Petitioner asserts that only two agents were present when he was arrested. Hr'g Tr. at 11:13 (describing his arrest by "two [officers], . . . only one ICE officer . . . [and a] police officer"); ECF No. 21 (Petitioner's July 21, 2026 Letter) (asserting that the "claims . . . made by ICE about [there] being 5 officers present at the time of [Petitioner's] arrest" are "not true" and that, in fact, "[i]t was one officer from ICE and one from ATF that apprehended [him] while [he]

"pursuant to 8 U.S.C. § 1225(b)(2)(A)" and has remained in ICE detention since his arrest. Opp. at 1; Hr'g Tr. at 25:16-17, 28:6-7.

On May 18, 2026, Petitioner filed this *pro se* Petition pursuant to 28 U.S.C. § 2241. On May 19, 2026, following the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), Respondent issued a Notice of Custody Determination "determining that [Petitioner] will remain in custody pending his removal proceedings" pursuant to Section 1226(a), instead of Section 1225(b). Opp. at 2; ECF No. 8-3 (Notice of Custody Determination). Petitioner "request[ed] an immigration judge review [that] custody determination," and an initial bond hearing was scheduled for June 1, 2026. Notice of Custody Determination; Reply; Hr'g Tr. 3:6-17, 16:6-9. In light of Petitioner's *pro se* status, and because he had not submitted evidence in advance of the requested hearing, Petitioner's bond hearing was rescheduled to July 1, 2026. Hr'g Tr. 3:6-17. Petitioner's July 1, 2026 hearing was similarly "withdrawn" by Petitioner "to allow Mr. Allen time to gather evidence in support of his request for bond." *Id.*; *see id.* at 20:22-24; ECF No. 21 (Pet.'s July 21, 2026 Letter) (referencing bond hearing scheduled for July 1, 2026 that Petitioner "withdrew").

**B. Procedural Background**

On May 20, 2026, the Court directed Respondent to show cause, by no later than May 22, 2026, why the writ should not be granted. ECF No. 5. The Court further directed Petitioner to file any reply by June 12, 2026. *Id.* Respondent filed its opposition to the Petition on May 22, 2026, acknowledging that "this case is not materially distinguishable from the Court's decisions in *Barbecho-Llivisacha v. Genalo*, No. 26 Civ. 3349 (JHR), 2026 WL 1345982, at *2 (S.D.N.Y.

---

was riding [his] bike back home in [M]ount [V]ernon"). This dispute is not material to the Court's ruling. It is uncontested that the arresting officers did not have a warrant, that both ICE and ATF were involved in Petitioner's arrest, and that Petitioner had illegally entered the United States. *See* Pet. ¶ 13; Opp. at 2; Hr'g Tr. at 9:7-9; *see also infra*, pp. 5-7.

May 14, 2026), and *Cabrera Castro v. Francis*, No. 26 Civ. 1063 (JHR), 2026 WL 1345940, at *1 (S.D.N.Y. May 14, 2026)." Opp. at 1. Respondent also stated that, "[a]fter the Second Circuit's decision in *Barbosa da Cunha* [*v. Freden*]," Respondent "views Petitioner's detention as now being governed by 8 U.S.C. § 1226." *Id.* at 2. Finally, Respondent submitted that "[a] bond hearing, as opposed to outright release, is the appropriate remedy here." *Id.* at 1.

According to the Clerk of Court's June 4, 2026 docket entry, the copy of the Court's May 20, 2026 Order at ECF No. 5 that was mailed to Petitioner was "Return[ed] to Sender." On June 11, 2026, because Petitioner had not received the Order, the Court "extend[ed] the deadline for Petitioner to file a reply to July 2, 2026" and adjourned "[t]he hearing tentatively scheduled for June 17, 2026 . . . to July 6, 2026 at 2:00 p.m." ECF No. 12. In addition, the Court directed Respondent to serve a copy of Respondent's May 22, 2026 letter (Opp.), Respondent's June 10, 2026 letter (ECF No. 11), and the Court's June 11, 2026 Order (ECF No. 12) on Petitioner and to file proof of service on the docket by June 15, 2026. ECF No. 12. On June 30, 2026, the Court received Petitioner's reply letter. Reply.

On July 6, 2026, the Court held a hearing on the Petition. *See* 07/06/2026 Minute Entry; ECF No. 16. After the hearing, the Court ordered Respondent to file additional documentation regarding Petitioner's criminal charges in Jamaica, along with a letter addressing whether Jamaica had made an extradition request and whether Petitioner was represented by counsel in his immigration proceedings (all of which were discussed at the hearing). ECF No. 16. On July 17, 2026, Respondent filed a post-hearing submission that included copies of the Interpol Red Notice and the Jamaican Arrest Warrant. ECF No. 17 (Post-hearing Letter). On July 21, 2026, Petitioner filed a response to the Government's letter that disputed Respondent's description of his arrest, requested an additional week to seek a standard bond hearing in immigration court, and argued that, although Petitioner has been in custody since September 26, 2025, the

Government has not justified his detention with "substantial evidence." Pet.'s July 21, 2026 Letter.

## II. LEGAL STANDARDS

District courts have authority pursuant to 28 U.S.C. § 2241 to issue a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Under this provision, federal courts are authorized to review a noncitizen's claims challenging the constitutionality of his or her detention during the pendency of removal proceedings. *Demore v. Kim*, 538 U.S. 510, 517 (2003).

Because Petitioner "is proceeding *pro se*, the Court construes his papers liberally 'to raise the strongest arguments that they suggest.'" *Hoyte v. Holder*, No. 10 Civ. 3460 (PAC) (JLC), 2011 WL 1143043, at *2 (S.D.N.Y. Mar. 25, 2011) (quoting *Diaz v. United States*, 517 F.3d 608, 613 (2d Cir. 2008)). Notwithstanding the "special solicitude" afforded to *pro se* litigants, "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III. DISCUSSION

### A. Petitioner's Arrest

Petitioner challenges his September 26, 2025 arrest as having been effected "without a warrant." Pet. ¶ 13. Respondent acknowledges that "ICE did not have a warrant when officers arrested [Petitioner] on the street" but maintains that the warrantless arrest was authorized under 8 U.S.C. § 1357(a)(2). Opp. at 2.

Section 1357(a)(2) authorizes an ICE agent to conduct a warrantless civil arrest of "any alien in the United States, if he has reason to believe that the alien so arrested" (1) "is in the United States" "in violation of any law or regulation made in pursuance of law regulating the

admission, exclusion, expulsion, or removal of aliens" and (2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "Because of the difficulty of making an on-the-spot determination as to the likelihood of escape without any opportunity to verify information provided or to conduct a full-scale interview, 'an [ICE] officer's determination [pursuant to Section 1357(a)(2)] will not be upset if there is any reasonable basis for it.'" *Contreras v. United States*, 672 F.2d 307, 308-09 (2d Cir. 1982) (quoting *Marquez v. Kiley*, 436 F. Supp. 100, 108 (S.D.N.Y. 1977)).

Here, the first prong of the inquiry is satisfied because Petitioner, whom the "officers positively identified [] through pedigree questions, physical description, and identification," "had previously been arrested by CBP after his unlawful entry and had been placed in removal proceedings based on a charge of inadmissibility." Opp. at 2 & n.2; *see* Form I-213 at 2-3 (noting that Border Patrol Agents had "encountered [Petitioner] unlawfully crossing the United States/Mexico International Land Border from Mexico into California," at which time Petitioner "stated that he was born in Jamaica, and he is a citizen and native of Jamaica"); Notice to Appear (charging Petitioner with violating Section 212(a)(6)(A)(i) of the Immigration and Nationality Act for being an "alien present in the United States without being admitted or paroled"); Hr'g Tr. at 9:7-9 (Petitioner acknowledging that he "crossed the border as a citizen of Jamaica").

Under the second prong, ICE determined that "there was a high likelihood that [Petitioner] would escape before a warrant could be obtained," given Petitioner's "*disregard for United States immigration law by illegally entering the United States* and the fact that [he] is wanted for murder." Form I-213 at 3 (emphasis added). In the Second Circuit, when a noncitizen's "deportability is clear and undisputed, that circumstance alone may provide a

sufficient basis for an [ICE] officer to believe that escape is likely before a warrant can be obtained." *Contreras*, 672 F.2d at 309 (citing *Ojeda-Vinales v. INS*, 523 F.2d 286, 288 (2d Cir. 1975)); *see also Vazquez-Medrano v. Sessions*, 726 F. App'x 92, 93 (2d Cir. 2018) (concluding that petitioner's warrantless arrest did not violate Section 1357(a)(2) where petitioner had "admitted that he was not lawfully in the United States," and citing *Contreras*); *cf. Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 31 (D.D.C. 2025) (noting the Second Circuit's holding that being "'clear[ly] and undisputed[ly]' deportable alone may signal a likelihood of escape"). Accordingly, the Court concludes that Petitioner's warrantless arrest was lawful under Section 1357.[3]

**B. Petitioner's Detention**

Following Petitioner's February 2024 arrest, he was "released [] from custody on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226(a)." Opp. at 1; Form I-213 at 3. When Petitioner was arrested and detained on September 26, 2025, he was subject to mandatory detention "pursuant to 8 U.S.C. § 1225(b)(2)(A)." Opp. at 1. In opposing this Petition,

---

[3] Petitioner also contends that he was arrested "because of [his skin] color." Pet. ¶ 13. As previously discussed, *supra* p. 2-3, however, the record reflects that Petitioner was arrested "[a]fter [ICE and ATF had] receiv[ed] a referral from the Mount Vernon Police Department." Opp. at 2; Form I-213 at 2. Moreover, Petitioner's Form I-213 includes a photograph of Petitioner, and when he was arrested, ICE was able to "positively identif[y] [Petitioner] through pedigree questions, physical description, and identification." Opp. at 2; Form I-213 at 1, 3. A petitioner who "offers nothing other than his own intuition to show that race played a part in the arresting agent's decision" does not establish a race-based violation. *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 237 (2d Cir. 2006) (rejecting petitioner's claim that his arrest was based in part on race where he failed to "allege[] facts adequate to support that belief"); *see Cerros-Ramon v. Sessions*, 720 F. App'x 81, 82 (2d Cir. 2018) ("[A]lthough he asserts that the traffic stop was based on his ethnicity, neither his testimony nor his affidavit described any basis for this belief."); *Montes v. King*, No. 00 Civ. 4707 (RCC) (JCF), 2002 WL 1808209, at *4 n.6 (S.D.N.Y. Aug. 6, 2002) (denying discrimination claim against arresting officer-defendants because plaintiff "ha[d] failed to come forward with any evidence, beyond conclusory allegations, which would allow a rational jury to find that defendants unlawfully discriminated against him").

Respondent has stated that "*Barbosa da Cunha*, which is controlling in the Second Circuit, likely counsels treating Petitioner as subject to 8 U.S.C. § 1226." *Id.* at 2 n.1. "Consistent with [that] assessment, on May 19, 2026, ICE issued a notice of custody determination (Form I-286) for Petitioner, determining that he will remain in custody pending his removal proceedings." *Id.* at 2; Notice of Custody Determination.

Petitioner challenges his detention on the grounds that "the Government [bears] the burden of proof to justify . . . by clear and convincing evidence that [he is] a danger to the community or a flight risk"; he has not been "provide[d] an individualized [b]ond [h]earing"; and his "detention has become unreasonably prolonged in violation of the Fifth Amendment right to due process." Pet. ¶ 13. In the Second Circuit, the *Mathews v. Eldridge* balancing test applies when determining whether Petitioner's confinement "pose[s] due process concerns." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Applying that test, the Court considers (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

**1. Petitioner's Interest**

Petitioner's detention implicates "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851-52 (concluding that the first *Mathews* factor "cut[] sharply in [petitioner's] favor" where he had "spent nearly fifteen months incarcerated in the Orange County Correctional Facility" pursuant to Section 1226(a)). Petitioner has been detained for more than eleven months at the Orange County Correctional Facility. *See* Form I-213 at 3. Although Petitioner's detention is shorter than Velasco Lopez's

fifteen-month detention, it is longer than the six-month, "presumptively constitutional period of detention." *Id.* at 855 n.13 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)). This factor thus weighs in Petitioner's favor. *See, e.g.*, *id.* at 851-52; *O.F.C. v. Almodovar* (*O.F.C. II*), No. 25 Civ. 9816 (LJL), 2026 WL 74262, at *9-10 (S.D.N.Y. Jan. 9, 2026) (determining that the first *Mathews* factor favored petitioner who had been incarcerated in the Orange County Correctional facility for eleven months); *see also O.F.C. v. Decker* (*O.F.C. I*), No. 22 Civ. 2255 (JPC), 2022 WL 4448728, at *11 (S.D.N.Y. Sept. 12, 2022) (ordering burden-shifted bond hearing where petitioner had been detained for more than fifteen months).

**2. Risk of Erroneous Deprivation**

The second *Mathews* factor assesses "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Velasco Lopez*, 978 F.3d at 852 (quoting *Mathews*, 424 U.S. at 335).

There is no doubt that the Government has the statutory authority to detain a noncitizen such as Petitioner under Section 1226(a) if "releas[ing]" him would "pose a danger to property or persons" or the noncitizen is not "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *see* 8 U.S.C. § 1226(a)(1)-(2) (for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole"). "Under § 1226(a), a noncitizen is entitled to an individualized bond hearing at the outset of detention to assess danger and flight risk." *Romero v. Francis*, No. 25 Civ. 8112 (JGK), 2025 WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025); *see, e.g.*, *Oldacre v. Arteta*, No. 26 Civ. 2672 (JGK), 2026 WL 1718184, at *3 (S.D.N.Y. June 12, 2026) (ordering bond hearing after concluding that petitioner could "be detained only under

§ 1226(a)"); *Da Cunha v. Freden*, No. 25 Civ. 6532 (MAV), 2025 WL 3280575, at *7 (W.D.N.Y. Nov. 25, 2025) ("find[ing] that Petitioner was detained under § 1226(a), [] not subject to mandatory detention under § 1225(b)(2)," and thus "entitled to a bond hearing at the outset of detention as established by existing federal regulations" (internal quotation marks and citation omitted)), *aff'd*, 175 F.4th 61 (2d Cir. 2026). Moreover, noncitizens who are "subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing." *Velasco Lopez*, 978 F.3d at 854; *O.F.C. II*, 2026 WL 74262, at *5 (concluding that petitioner, who was detained for eleven months, was subject to prolonged detention and thus entitled to "the process outlined in *Velasco Lopez*").

During Petitioner's eight months of mandatory detention under Section 1225, he had no statutory right to an individualized bond hearing to test the need for detention. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018); 8 U.S.C. § 1225(b)(2). In light of the Second Circuit's decision in *Barbosa da Cunha v. Freden*, however, Respondent has stated that "the [G]overnment views Petitioner's detention as now being governed by . . . 8 U.S.C. § 1226(a)," and "on May 19, 2026, ICE issued a notice of custody determination (Form I-286) for Petitioner, determining that he will remain in custody pending his removal proceedings." Opp. at 2; Notice of Custody Determination.

Respondent argues that Petitioner's continued detention is justified because "Petitioner was not indiscriminately arrested by ICE for detention under § 1225(b)(2)(A) based on his manner of entry; instead, he was re-detained after ICE learned that Petitioner is wanted for murder in Jamaica." Opp. at 3. At the July 6, 2026 hearing, counsel for Respondent informed the Court that Respondent "[came] to learn that petitioner is a foreign fugitive wanted for murder in Jamaica . . . through the Interpol [Red] [N]otice," and that the "allegations that [Petitioner] is wanted in Jamaica . . . probably [were] a predominant factor" in ICE's May 19, 2026 custody

determination. Hr'g Tr. at 12:18-13:10, 17:5-23; *see* Interpol Red Notice; Jamaican Arrest Warrant.

Although the Second Circuit has not addressed this question, several courts have cautioned against relying solely on Interpol Red Notices in immigration proceedings because they are "not independently vetted for factual and legal justification," and their "reliability corresponds with that of the foreign nation's arrest warrant." *Yeleshev v. Larocco*, No. 26 Civ. 2294 (SJB), 2026 WL 1353806, at *5 (E.D.N.Y. May 14, 2026) (quoting *Gonzalez-Castillo v. Garland*, 47 F.4th 971, 978 (9th Cir. 2022)) (collecting cases), *appeal filed*, No. 26-1898 (2d Cir. July 14, 2026); *see A.P.C. v. Genalo*, No. 26 Civ. 5827 (KPF), 2026 WL 2323423, at *2 (S.D.N.Y. Aug. 11, 2026) (acknowledging that "[p]etitioner's arguments about the propriety of relying on allegations contained in a Red Notice, and whether ICE contravened its own internal policy by doing so . . . , are forceful arguments worthy of an Immigration Judge's attention" and ordering a burden-shifted bond hearing instead of release). ICE's own guidelines also state that "[a] Red Notice . . . is not an international arrest warrant and conveys no legal authority to arrest, detain, or remove a person," and that "ICE personnel will not rely exclusively on Red Notices . . . to justify enforcement actions or during immigration proceedings." ICE Directive 15006.1 (Aug. 15, 2023), available at https://www.ice.gov/node/63693.

The lack of a hearing at which the Government bears the burden to justify Petitioner's continued detention raises a risk of erroneous deprivation. *See, e.g.*, *O.F.C. II*, 2026 WL 74262, at *10 ("[A] risk of erroneous deprivation exists insofar as Petitioner was provided with a bond hearing two-and-a-half months after his initial detention where he was required to prove a negative (i.e., that he was not a danger to the community or a flight risk)."); *Mathieu v. Department of Homeland Security*, No. 26 Civ. 4630 (PAE), 2026 WL 1747084, at *5 (S.D.N.Y. June 17, 2026) (finding risk of erroneous deprivation where petitioner was detained for eight

months and the immigration judge "did not make an 'unequivocal determination' that [petitioner] posed a danger to the community" but relied instead on petitioner's failure to satisfy his burden of proof); *J.C.G. v. Genalo*, No. 24 Civ. 8755 (JLR), 2025 WL 88831, at *8 (S.D.N.Y. Jan. 14, 2025) (similar, after petitioner was detained for nine months).

**C. The Government's Interest**

The third *Mathews* factor addresses "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez*, 978 F.3d at 854 (quoting *Mathews*, 424 U.S. at 335). "[T]he Attorney General's discretion to detain individuals under § 1226(a) is valid where it advances a legitimate governmental purpose." *Id*. Specifically, the Government has an interest in "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." *Zadvydas*, 533 U.S. at 690; *see also Velasco Lopez*, 978 F.3d at 854.

These interests are legitimate where, as here, Petitioner stands accused of a crime that could alter the dangerousness and risk of flight analysis, and "the Government might have an interest in temporarily holding an individual . . . for a short period of time so that a neutral decisionmaker can confirm whether the individual constitutes a danger to the community." *O.F.C. II*, 2026 WL 74262, at *11 (citing *Morrissey v. Brewer*, 408 U.S. 471, 487 (1972)). But "[w]hile the Government's interest may have initially outweighed short-term deprivation of [Petitioner's] liberty interests," "the longer detention continues, the greater the need for the Government to justify its continuation." *Velasco Lopez*, 978 F.3d at 855. And "shifting the burden of proof to the Government to justify continued detention *promotes* the Government's interest—one we believe to be paramount—in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d at 854.

* * * *

In light of the Government's explanation for Petitioner's detention based on an updated assessment—that he was "re-detained after ICE learned that Petitioner is wanted for murder in Jamaica," Opp. at 3—the Court concludes that the appropriate remedy is a bond hearing at which the Government shall bear the burden to prove that Petitioner is a danger to the community or a flight risk by clear and convincing evidence. *Compare O.F.C. II*, 2026 WL 74262, at *11-14 (concluding that the Government's interest favored ordering a burden-shifted bond hearing, instead of release, where petitioner was convicted of a crime while on bond and it was "at least plausible" that Petitioner had received "some level of individualized determination"), *with Valdez v. Joyce*, 803 F. Supp. 3d 213, 218-19 (S.D.N.Y. 2025) (concluding that the Government failed to show a significant interest in Petitioner's continued detention and ordering release where "[p]etitioner ha[d] *no criminal history in any country*, and [r]espondents [did] not argue that he is a danger to the community" (emphasis added)); *and Lopez Benitez*, *v. Francis*, 795 F. Supp. 3d 475, 495-96 (S.D.N.Y. 2025) (similar).

## IV. CONCLUSION

For the foregoing reasons, the Petition is granted in part. Respondent is ORDERED to cause an individualized bond hearing for Petitioner to be conducted before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) by **September 22, 2026**. At the hearing, the Government shall bear the burden to prove that Petitioner is a danger to the community or a flight risk by clear and convincing evidence.

If the Immigration Judge orders Petitioner's release, Respondent is directed to immediately release him from custody.

Respondent shall serve a copy of this Order on Petitioner and file proof of service on the docket no later than **September 14, 2026**. Respondent is further directed to file a letter updating the Court on the status of this matter by **September 18, 2026**.

SO ORDERED.

Dated: September 11, 2026
New York, New York

Jennifer H. Rearden

JENNIFER H. REARDEN
United States District Judge